CLARK, J.,
DISSENTING WITH OPINION.
The state charged Appellant with armed robbery for being stabbed. Simply, there was one knife, which Appellant simultaneously came into possession of and armed himself with upon being stabbed. The state’s theory is absurd, and the trial court erred by denying Appellant’s requested judgment of acquittal on the charge of armed robbery. This Court should exercise care that the issue of the clerk’s lawful right to defend himself from a robbery is not confused with the issue of whether Appellant robbed the clerk of his knife. I therefore dissent.
After learning the clerk was working alone, Appellant jumped over the counter toward the clerk and demanded money and cigarettes by threat of violence. The store clerk refused to give Appellant any money or cigarettes. As the empty-handed Appellant was jumping back over the counter, the store clerk buried a Gerber knife into Appellant’s back. Appellant walked a few steps, stumbled, and removed the knife from his back. As Appellant removed the knife from his back, he turned back toward the store clerk, who then hurriedly left the building. Thereafter, so did Appellant.
For armed robbery, the state must thus show two things: a robbery and that Appellant was armed. Here, the state argues the same evidence (Appellant was stabbed with a knife) fulfills both. “Robbery” means:
The taking of money or other property ... from the person or custody of another, with intent to either permanently or temporarily deprive the person ... of the money or other property, when in the course of taking there is the use of force, violence, assault, or putting in fear.
§ 812.13(1), Fla. Stat.
A robbery is enhanced from a second degree felony to a first degree felony “if, in the course of committing the robbery, the offender carried a firearm or other deadly weapon.” § 812.13(2)(a), Fla. Stat. An offender’s flight after the commission of the robbery is considered to be “in the course of committing the robbery.” § 812.13(3)(a), Fla. Stat.
Because robbery is a specific intent crime, Appellant had to have the specific intent to commit the crime. Daniels v. State, 587 So.2d 460, 462 (Fla.1991). The intent to commit a robbery includes the specific intent to steal; that is, to deprive the owner or custodian of property either permanently or temporarily. Id. “[I]t is imperative that the intent to steal exist at the time of the taking.” Stevens v. State, 265 So.2d 540 (Fla. 2d DCA 1972). Accordingly, to prove robbery, the state has to prove that at the time Appellant was stabbed by the store clerk, he intended to permanently or temporarily deprive the clerk of his knife.
The state also had to prove that Appellant was armed “during the commission of’ or in flight from the robbery. Note that the state’s theory of armed robbery was not that Appellant armed himself with the deadly weapon after unsuccessfully demanding money and cigarettes, intending to use his new-found weapon to again seek money and cigarettes. But instead, it was that Appellant committed the armed robbery when he obtained possession of the knife (the one in his back) from the clerk: *941 He was now armed, and he stumbled away with the knife. He robbed, while armed, the knife the clerk had just plunged into his back.
Being stabbed cannot equate to “taking” a knife. To “take” means to “get into one’s ... possession by voluntary action.”[2] It means “to obtain possession or control without the owner’s consent.” Black’s Law Dictionary 1492 (8th ed.2004). “Obtain” means “to gain or attain usually by planned action or effort.”[3] Thus; “taking” implies a conscious, intentional, voluntary act on the part of the one taking something. “Taking” something from somebody contemplates the taker voluntarily do something to obtain possession of the thing he or she takes.
Here, there is no evidence Appellant ever saw the knife before he was stabbed with it; no evidence he knew the knife existed before he was stabbed with it; no evidence he wanted the knife; no evidence he asked for or demanded the knife. Consequently, there is no evidence Appellant took the knife with intent to deprive the store clerk of it, either permanently or temporarily.
To be sure, the knife was “given” to Appellant. The store clerk gave — even if temporarily — the knife to Appellant when he plunged it into his back. However, the passive act of taking delivery of the knife (in his back and through his now-collapsed lung) cannot be construed to constitute an intentional act of taking on Appellant’s part. Appellant did not take the knife. It was, quite literally, forced upon him. Appellant did not ask for the knife, did not demand the knife, and did not voluntarily accept the knife when it was “given” to him — in fact, he immediately took the knife out from where it had been lodged.
Taken to its logical end, will a person poisoned with Ricin be charged with armed robbery of the Ricin? After all, he now possesses a deadly weapon and “took” it from the poisoner. Being poisoned — or in this case stabbed — is simply not a crime. It is fundamental error to convict a person where there is a complete absence of a prima facie showing of the essential elements of a crime. See Allen v. State, 876 So.2d 737, 740-41 (Fla. 1st DCA 2004).
The state had a host of charging options available to prosecute Appellant for his crimes. Instead, the state proceeded on an absurd theory: that Appellant formed the necessary intent to steal the knife when he found it stuck in his back. The trial court should have entered a judgment of acquittal of armed robbery.

. http://dictionary.reference.com/browse/take? s=t. It can also mean, "to get into one’s hands, possession, control, etc. by force or artifice”; i.e., "to take a bone from a snarling dog.” Id.

. http://www.merriam-webster.com/ dictionary/obtain.